UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| DAVID LEE ELKINS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NO.: 2:10-CV-80 |
|  | ) |  |
| DET. CHARLIE GIBSON, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

MEMORANDUM OPINION AND ORDER

On September 13, 2012, the defendant filed a Motion for Summary Judgment, [Doc. 30], as to all claims in this section 1983 action.[1] Specifically, the defendant asserts that he is entitled to qualified immunity. He further asserts that the plaintiff fails to state a claim upon which relief can be granted for the federal and state malicious prosecutions claims. The plaintiff has responded, [Doc. 35], and the matter is ripe for review.[2] For the reasons set forth below, the motion is GRANTED, and the case will be DISMISSED.

**I. FACTS**

The facts taken in the light most favorable to the plaintiff are set forth below.[3] On May 3, 2004, the plaintiff, as power of attorney, transferred $40,000.00 from his mother's bank account to an account in his name but marked "For Mae Elkins." Thereafter, he wrote several checks from the account. On June 3, 2004, he wrote a check from this account to his daughter in the

---

[1] The defendant is sued in his individual capacity only.
[2] The response was filed by Carl R. Ogle, Jr., Esquire. However, he withdrew from the case on December 4, 2012. *See* [Doc. 44]. Since that time, the plaintiff has proceeded *pro se*.
[3] The plaintiff seeks to exclude facts and exhibits submitted by the defendant on the basis that the defendant did not know this information at the time of procuring the arrest warrant. It is clear from record and the context of the depositions that the defendant was in possession of the information at the time he procured the warrant. Thus, the request is denied.

amount of $1,000.00 for a graduation gift. He stated that he did this at Mae Elkins' direction. On August 13, 2004, he wrote a check to "FCB" (First Community Bank) for $1,100.00. The plaintiff cannot explain the reason for writing this check. After Ms. Elkins' death, on October 11, 2004, the defendant wrote a check to the nursing home that housed his mother for $13,076.50. The balance left in this account after this check was $27,167.53. About six months after Ms. Elkins' death, the plaintiff and his wife applied for a loan for a truck and listed this $27,167.53 as an asset.

In addition, the plaintiff's brother Gene Elkins took issue with the validity of Ms. Elkins' will. However, under both wills at issue, Ms. Elkins' had directed that her bank accounts be divided equally between the plaintiff and Gene Elkins. The plaintiff was deposed in the will contest lawsuit on August 29, 2006, and denied moving any money out of Ms. Elkins' accounts. The defendant was aware of this lawsuit and apparently aware of Gene Elkins' supposed threats of criminal prosecution if the plaintiff failed to settle the suit according to his satisfaction.

However, the plaintiff continued to withdraw money from the "For Mae Elkins" account. On March 2, 2007, the plaintiff wrote a check from the "For Mae Elkins" account for "cash" in the amount of $10,000.00. The plaintiff used this money to pay the loan on his truck. On March 14, 2007, the plaintiff used $8,000.00 from the account to pay Leslie Shields, his attorney who represented him in an IRS tax audit proceeding. On August 3, 2007, he wrote a check payable to "cash" in the amount of $7,000.00. The plaintiff does not know what happened to this money. On March 30, 2008, he used $3,300.00 of the money to pay on his truck loan. The plaintiff does not deny that he used the money from the account for his personal use; however, he claims that his attorney advised him that he could use the money.

The defendant discussed this information and other evidence from his investigation, including the issue of the statute of limitations, with Assistant District Attorney Alex Pearson. ADA Pearson opined that probable cause existed to obtain a warrant for theft over $10,000.00, and he assisted in drafting the warrant. The warrant was issued on April 20, 2009, by a deputy clerk. The warrant states:

> IN 2008 AN INVESTIGATION WAS BEGAN (sic) BY THE ROGERSVILLE POLICE DEPARTMENT INTO THE THEFT OF FUNDS FROM MAE ELKINS ACCOUNTS. DURING THE INVESTIGATION DET. CHARLIE GIBSON, HAVE (sic) FOUND THAT IN MAY OF 2004 DAVID ELKINS UNLAWFULLY USED HIS POWER OF ATTORNEY TO REMOVE FUNDS FROM MAE ELKINS BANK ACCOUNT AND PLACE THEM INTO ANOTHER INDIVIDUAL ACCOUNT IN HIS NAME. BANK RECORDS WERE OBTAINED FROM FIRST COMMUNITY BANK SHOWING THAT $40,000.00 HAD BEEN REMOVED FROM MAE ELKINS ACCOUNT. THE BANK RECORDS ALSO INDICATE THAT PART OF THE MISSING MONEY TAKEN FROM MAE ELKINS ACCOUNT WAS USED TO PAY ON A PERSONAL LOAN OF DAVID AND KATHERINE ELKINS. THE SHUFFLING OF MONEY FROM ONE ACCOUNT TO ANOTHER CONCEALED THE THEFT. AT THIS TIME I FEEL THERE IS PROBABLE CAUSE TO CHARGE DAVID ELKINS WITH THEFT OVER $10,000.00.

ADA Pearson stated that he knows of no facts contained in this warrant that are false or misleading. ADA Pearson further opined that the statute of limitations had been tolled by the plaintiff's concealment of the theft. However, after the plaintiff's arrest, the criminal charge was dismissed by the criminal court judge because "it [was] outside the statute of limitations."

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a

motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists

cannot defeat a properly supported motion for summary judgment. *Id*. A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

Again, the defendant claims that he is entitled to qualified immunity for the alleged Fourth Amendment violations, i.e. false arrest, false imprisonment and malicious prosecution.[4]

> In determining an officer's entitlement to qualified immunity [this Court] follow[s] a two-step inquiry.[5] *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First, taken in the light most favorable to the plaintiff, [the Court] decide[s] whether the facts alleged show the officer's conduct violated a constitutional right. *Id*. at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id*.

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer

---

[4] The plaintiff also alleges that the defendant violated his Fourteenth Amendment rights. However, "the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th 2005). As such, that claim is dismissed, and the Court will proceed with a Fourth Amendment analysis. To the extent the plaintiff asserts a Fourteenth Amendment substantive due process claim, the Court will still use a Fourth Amendment analysis. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

[5] The Supreme Court has held that the *Saucier* approach is no longer mandatory, and the district courts can elect to decide the second issue without determining whether a constitutional violation actually occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This Court will use the two step approach of *Saucier*.

would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

With respect to all claims, the existence of probable cause is essential to the determination of whether the officer's conduct violated the plaintiff's Fourth Amendment constitutional rights.[6] In addition, in the false arrest context where false or misleading statements in arrest warrants are alleged, the plaintiff must establish (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth, and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Vakilian*, 335 F.3d at 517.

Here, there exists plenty of evidence in the record, evidence that was known to the defendant at the time he sought the warrant, to support probable cause that the plaintiff committed theft over $10,000.00. From this evidence a reasonable officer could have believed that his actions were consistent with the plaintiff's constitutional rights in seeking the warrant, in arresting the plaintiff and in pursuing prosecution of the case. Therefore, no constitutional right of the plaintiff was violated. As such, the defendant is entitled to qualified immunity as to all claims.

---

[6]The Sixth Circuit has recently set forth the elements of a Fourth Amendment malicious prosecution claim. The court stated:
> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution . . . Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiffs favor. Id., at 308-09 (footnote and some citations omitted).

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010).

More specifically, in relation to the false arrest claim, the plaintiff argues that there were omissions from and misrepresentations in the arrest warrant. However, this Court has reviewed each of those claims and finds that they are without merit. While the omissions are contextual and may help explain background information, they are immaterial to a determination of probable cause.

Finally, the defendant argues that the motion should be granted on many grounds other than qualified immunity.[7] However, the Court need not address each of those, as the qualified immunity analysis readily decides the case.

## IV. CONCLUSION

For the reasons set forth above, the defendant's motion is GRANTED, [Doc. 30], and the plaintiff's case is DISMISSED WITH PREJUDICE.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

---

[7] The defendant argues that the plaintiff's malicious prosecution claim fails to state a claim upon which relief can be granted because the Complaint fails to state facts which indicate any detention apart from his arrest. *See Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). As to the state malicious prosecution claim, the defendant argues that the plaintiff has failed to state a claim for relief because he did not control the prosecution, but the assistant district attorney general has that control. *See Pera v. Kroger Co.*, 674 S.W.2d 715 (Tenn. 1984). Lastly, he argues in regard to the false imprisonment claim that the finding of the indictment by the grand jury was fair on its face and therefore it determined the existence of probable cause. *See Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006).